## ROBERT REICHERT *v.* MELINDA BRONSON
### (AC 28443)

Bishop, Gruendel and Borden, Js.

Submitted on briefs November 20, 2008—officially released April 21, 2009

*Louis Kiefer* filed a brief for the appellant (defendant).

*Opinion*

GRUENDEL, J. The defendant, Melinda Bronson, appeals from the judgment of the trial court granting the motion of the plaintiff, Robert Reichert,[1] to modify a maintenance order. She claims that the court improperly concluded that the plaintiff had demonstrated extreme hardship as required under New York law.[2] We reverse the judgment of the trial court.

---

[1] At the time that this appeal was filed, Robert Reichert was the plaintiff. The record indicates that he died sometime in late 2007. By motion filed February 29, 2008, the defendant moved to substitute as the plaintiff Jean Devlin, the executrix of the estate of Robert Reichert, which this court granted on May 2, 2008. Neither the plaintiff nor the substitute plaintiff has filed an appearance or an appellate brief in this appeal. Our references in this opinion to the plaintiff are to Robert Reichert.

Furthermore, we note that neither party has raised any issue regarding abatement. "Although at common law the death of a sole plaintiff or defendant abated an action . . . by virtue of [General Statutes] § 52-599, Connecticut's right of survival statute, a cause of action can survive if a representative of the decedent's estate is substituted for the decedent. It is a well established principle, however, that [d]uring the interval . . . between the death and the revival of the action by the appearance of the executor or administrator, the cause has no vitality. The surviving party and the court alike are powerless to proceed with it." (Citation omitted; internal quotation marks omitted.) *Burton* v. *Browd*, 258 Conn. 566, 570–71, 783 A.2d 457 (2001).

[2] The defendant also claims that (1) New York Domestic Relations Law § 236 (B) (9) (b) (McKinney 2008) violates article one, § 10, of the constitution of the United States, (2) the court abused its discretion in admitting evidence of her misdemeanor convictions, (3) the court improperly found that she was the sole cause of her children's psychiatric and psychological problems absent expert testimony thereon and (4) the court improperly concluded that a statement contained in her pendente lite motion for attorney's fees constituted an admission. We do not address those issues in light of our resolution of the defendant's principal claim.

The parties married in 1980. Their first child, A,[3] was born on January 12, 1987. Their second child, B, was born on January 13, 1989. On November 4, 1998, the Supreme Court of the state of New York rendered a judgment of divorce that incorporated, but did not merge, the maintenance provisions of a stipulated agreement entered into by the parties. That agreement provided, inter alia, that the plaintiff "shall pay to [the defendant] the sum of $15,000.00 per year, $1,250.00 per month as and for maintenance of the [defendant] for a period of six years. Said payments shall commence August 1, 1998, [and] shall continue monthly thereafter for six years unless terminated earlier by the remarriage of the [defendant] or the death of either party." Accordingly, the judgment of divorce ordered the plaintiff to "pay to [the defendant] the sum of $1,250.00 per month for maintenance commencing on August 1, 1998, and on the first day of each month thereafter, pursuant to the parties' [s]tipulation of [s]ettlement . . . ."

Although the defendant originally was awarded custody of the minor children, a New York court on January 15, 1999, transferred custody to the plaintiff. On March 30, 2000, that court "found that the [plaintiff] had without justification or reason failed to pay maintenance for three and one-half months." The court found a maintenance arrearage of $4440 and ordered the plaintiff to pay attorney's fees to the defendant in the amount of $875.

In May, 2000, on information supplied by A, the defendant was charged with sexual abuse in the second degree in violation of New York Penal Law § 130.60 (2) (McKinney 2004) and endangering the welfare of a child in violation of New York Penal Law § 260.10 (McKinney

---

[3] The record contains information regarding the sexual abuse of A. Although not germane to the issues presented in this appeal, we nevertheless decline to identify the minor children in this matter by name. See General Statutes § 54-86e.

2004), both misdemeanors under New York law. The defendant was convicted of those counts.

On June 7, 2001, the plaintiff filed with the Superior Court in Connecticut an affidavit regarding a foreign judgment, namely, the November 4, 1998 judgment of divorce rendered in New York. The following day, the plaintiff filed a motion for modification of child support, maintenance and visitation. The motion requested, inter alia, that "the monthly maintenance payments in the amount of $1,250.00 from [the plaintiff to the defendant] be terminated, retroactive to January 15, 1999 . . . ." On August 16, 2001, the defendant filed the first of several motions in the Connecticut court for contempt, alleging that the plaintiff had failed to pay maintenance as required by both the judgment of divorce and the March 30, 2000 order. The defendant filed her second motion for contempt on May 10, 2002. By order dated October 3, 2002, the court found the plaintiff in contempt. The court found the maintenance arrearage due to the defendant as of September 20, 2002, to be $48,079.63. In that order, the court stated that it would "act on the plaintiff's motion for modification of [maintenance] at a further hearing."

On July 14, 2005, the court entered an order granting the plaintiff's motion for modification. The court issued "corrected orders" on August 9, 2005, terminating the plaintiff's maintenance obligation retroactive to June 8, 2001. In addition, it entered the following orders: "[The] [b]alance due [to the] [d]efendant amounts to $48,079.63 (finding of September 20, 2002) less retroactive modification of $25,000 ($1250 x 20 months) and payment of $4000 in November, 2002. The resulting new balance is $19,079.63. The plaintiff is to present [a] payment plan to [the defendant's] counsel within thirty days. . . . Counsel fees [are] awarded to the defendant in the amount of $3000. . . . All uncompromised prior orders [are] to remain in full force and effect." The defendant

thereafter filed motions for reargument and for a new trial. By memorandum of decision filed December 7, 2006, the court denied those motions. In that memorandum, the court noted that the defendant "was arrested, tried and convicted of sexual abuse by the New York courts." The court continued: "As a result of the [defendant's] actions, the children developed a multitude of psychiatric and psychological problems. The Connecticut Superior Court and New York courts issued restraining orders against the [defendant], the mother-child relationship broke down and to a large extent has continued to this day. The plaintiff claims that as a result of the defendant's actions, he had to give up his career as a national and international photographer to be available for his sons and their care. The court finds that the plaintiff has proved 'extreme hardship' under New York law. Spousal support is ordered terminated as of the date of the motion to modify, which was filed on June 8, 2001." From that judgment, the defendant appeals.

On appeal, the defendant maintains that the court improperly concluded that the plaintiff had demonstrated extreme hardship as required under New York law. We agree.

At the outset, we note the applicable standard of review. To the extent that the court made findings of fact underlying its determination that modification was warranted, we consider those findings under the clearly erroneous standard. *Gosselin* v. *Gosselin*, 110 Conn. App. 142, 145, 955 A.2d 60 (2008). At the same time, whether the court properly applied the New York statute in question is an issue of law over which our review is plenary. See *Gonzalez* v. *Surgeon*, 284 Conn. 554, 572, 937 A.2d 13 (2007) (whether defendant properly interpreted and applied statute is question of law subject to plenary review).

New York Domestic Relations Law provides in relevant part: "Where, after the effective date of this part [July 19, 1980], a separation agreement remains in force no modification of a prior order or judgment incorporating the terms of said agreement shall be made as to maintenance without a showing of extreme hardship on either party, in which event the judgment or order as modified shall supersede the terms of the prior agreement and judgment for such period of time and under such circumstances as the court determines . . . ." N.Y. Dom. Rel. Law § 236 (B) (9) (b) (McKinney 2008). The statute "permits a . . . modification of the maintenance provision of a divorce judgment to supersede the maintenance terms of the agreement for such time and under such circumstances as the court determines upon a showing of extreme hardship, which is a stricter standard of proof than a substantial change of circumstances." *Cohen* v. *Seletsky*, 142 App. Div. 2d 111, 120, 534 N.Y.S.2d 688 (1988). Accordingly, in seeking modification of the judgment of divorce under § 236 (B) (9) (b), the plaintiff shouldered the substantial burden to "demonstrate that the continued enforcement of the maintenance terms of the divorce judgment will create an extreme hardship to him." Id., 121. On our review of the record, we conclude that the plaintiff failed in that regard.

Central to the court's ultimate determination in the present case is its finding that "as a result of the defendant's actions, [the plaintiff] had to give up his career as a national and international photographer to be available for his sons and their care." That finding is not supported by the record. In 1998, the plaintiff did not have custody of the minor children. The plaintiff's 1998 federal tax return listed income from his photography business of approximately $14,773. In 1999, custody of the children was transferred to the plaintiff. At that time, the plaintiff had remarried and had relocated from

New York to a home in West Hartford owned by his new wife, Nancy Reichert. The plaintiff testified that the mortgage on that property was paid exclusively by Nancy Reichert. The plaintiff further testified that for the 1999 year in which he had custody of the children, he earned $48,000 from his photography business. In 2000, the plaintiff filed a joint tax return with Nancy Reichert that, although listing no income from his self-employment, nevertheless documented an adjusted gross income of $185,000. The plaintiff's 2003 tax return listed income from his photography business of $21,608. In a financial affidavit filed with the court on September 29, 2004, the plaintiff listed a weekly income of $350, or $18,200 annually. That evidence belies the plaintiff's contention that his custody and care for the children caused a detrimental effect on his income. To the contrary, his income increased following the transfer of custody. That increase militates against a finding of extreme hardship under § 236 (B) (9) (b). *Alice C.* v. *Bernard G. C.*, 193 App. Div. 2d 97, 111, 602 N.Y.S.2d 623 (1993); see also *Robinson* v. *Robinson*, 176 Misc. 2d 952, 956, 674 N.Y.S.2d 921 (1998) (appropriate to compare financial circumstances at time of divorce to present financial circumstances in considering extreme hardship). In addition, it is significant that although the plaintiff alleged that he had incurred substantial medical expenses for the minor children, he declined to provide any supporting documentation or detail when invited to do so before the court. Furthermore, the defendant testified that at the time he obtained custody of the children, he had more than $330,000 in an individual retirement account fund that he had inherited. See *Pintus* v. *Pintus*, 104 App. Div. 2d 866, 868–69, 480 N.Y.S.2d 501 (1984) (defendant's unemployment insufficient to establish extreme hardship in light of other funds maintained in bank accounts).

At its essence, the plaintiff's argument before the trial court was that the transfer of custody, in and of itself,

constituted extreme hardship. That proposition has been considered and rejected by New York courts. In *Harkavy* v. *Harkavy*, 167 App. Div. 2d 510, 562 N.Y.S.2d 182 (1990), the defendant husband sought a downward modification of certain maintenance obligations under § 236 (B) (9) (b) in light of his assumption of custody of two minor children subsequent to the judgment of divorce. In dismissing his claim, the Appellate Division stated: "Assuming, arguendo, that the husband, in a timely fashion, raised a sufficient claim for relief from his maintenance obligation, the proof adduced at the hearing indicated only that there had been a change in custody. While the transfer of custody of the children to the husband was a significant change in circumstances, the husband failed to adduce any evidence at the hearing to indicate that his assumption of custody resulted in extreme financial hardship." Id., 511–12. The same could be said in the present case.

Moreover, although most unfortunate, the fact that the defendant was convicted of misdemeanor charges of sexual abuse and endangering the welfare of a child does not elevate the plaintiff's financial plight to one of extreme hardship. The plaintiff has provided no evidence whatsoever to support such a contention.

In light of the foregoing, we conclude that the plaintiff failed to sustain his burden of demonstrating an extreme hardship warranting the termination of his maintenance obligations under § 236 (B) (9) (b). The court improperly determined otherwise.

The judgment is reversed and the case is remanded with direction to deny the motion for modification.

In this opinion the other judges concurred.